[841 NYS2d 506]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JUAN PANIAGUA, Appellant.

First Department, September 6, 2007

### APPEARANCES OF COUNSEL

*Robert S. Dean, Center for Appellate Litigation*, New York City (*Gayle Pollack* of counsel), for appellant.

*Robert M. Morgenthau, District Attorney*, New York City (*Eleanor J. Ostrow* of counsel), for respondent.

### OPINION OF THE COURT

SULLIVAN, J.

Defendant was convicted in October 2002 of criminal sale of a controlled substance in the first degree (a class A-I felony) and criminal sale of a controlled substance in the second degree (a class A-II felony), inter alia. He was sentenced on these two counts to concurrent indeterminate terms of 15 years to life

(Penal Law § 70.00 [2] [a]; [3] [a] [i]) and three years to life (§ 70.00 [2] [a]; [3] [a] [ii]), respectively, which were the minimum sentences allowed by law.

In 2004, the Legislature, in the Drug Law Reform Act (2004 DLRA), authorized new sentencing guidelines for these class A felonies (see Penal Law § 70.71). The legislation permitted certain convicted A-I felons to apply for resentencing under the new guidelines (L 2004, ch 738, § 23). Defendant made such an application with regard to his A-I conviction. He also sought resentencing on his A-II conviction. On July 12, 2005 (the first order appealed from herein), he was resentenced on the A-I count to a determinate term of eight years, to be followed by five years of postrelease supervision. His application with respect to his A-II conviction was denied as premature, without prejudice, in light of the fact that further ameliorative reform with regard to A-II resentencing was pending and had not yet been enacted into law.

Further legislation was enacted and became effective in October 2005 (2005 DLRA), this time permitting certain convicted A-II felons to apply for resentencing under this new law (L 2005, ch 643). Defendant this time applied for resentencing on his A-II conviction, but in order to qualify, he requested reinstatement of his original sentence on the A-I conviction. On March 13, 2006 (the second order appealed from herein), the court denied this latest application.

Defendant's challenge to the resentence on his class A-I felony is without merit because he received the minimum sentence allowed under the 2004 DLRA—a determinate term of eight years' imprisonment, which, by law, must be accompanied by a term of five years of postrelease supervision—and precisely the sentence defendant requested. Defendant also contends that the court erred in refusing to resentence him on his A-II conviction at the time.

As to the appeal from the resentence on the A-I felony, defendant argues that the court violated the provision of the 2004 DLRA that directs a sentencing court to "specify and inform" the defendant of the proposed sentence and to give him the opportunity to withdraw the application or to appeal the proposed sentence before it is imposed (2004 DLRA § 23). By not following that procedure, he argues, he was denied the opportunity to consult with counsel before the imposition of sentence and thereby lost the ability to be subsequently resentenced on his class A-II felony conviction.

■ At the outset we note that defendant never preserved this argument for appellate review and we decline to renew it in the interest of justice. In any event, the claim is meritless. The 2004 DLRA provides that a sentencing court "shall . . . specify and inform" the defendant of the determinate sentence it proposes to impose and "shall enter an order to that effect." (*Id.*) The court "shall notify" the defendant that "unless he or she withdraws the application or appeals from such order," it will vacate the originally imposed sentence and impose the determinate sentence. (*Id.*) An appeal as of right may be taken from the newly imposed sentence on the grounds that the term of the new sentence is harsh or excessive, or is unauthorized as a matter of law.

Thus, the "specify and inform" provision recognizes that a resentencing court's proposed sentence might be less favorable, from a defendant's perspective, than the indeterminate sentence originally imposed. For instance, under the 2004 DLRA, a resentencing court could decide to impose a determinate sentence that is longer than the minimum term of the defendant's indeterminate[1] sentence. In such a situation, a resentencing court's failure to "specify and inform" a defendant of the proposed sentence before imposing that sentence would expose the defendant to a determinate sentence that, to him, might be more onerous than the indeterminate sentence he is already serving.

As this Court has recognized, however, when, as here, the resentencing court imposes a determinate sentence that the defendant finds manifestly acceptable, the imposition of that sentence without first "specifying and informing" the defendant of the proposed sentence—even if a technical violation of the statute—does not entitle the defendant to any relief on appeal (*see People v Bennett*, 31 AD3d 298 [2006], *lv denied* 7 NY3d 846 [2006]; *see also* CPL 470.05 [1] ["An appellate court must determine an appeal without regard to technical errors or defects which do not affect the substantial rights of the parties"]). Where, as here, a defendant receives the very sentence that he requests, which happens to be the minimum under the law and considerably less than the minimum term of the original indeterminate sentence, there is no risk, nor can there be any argument, that he is being subjected to a sentence less de-

---

1. Penal Law § 70.71 (2) (b) (i), which applies to a resentence on a class A-I felony, authorizes the imposition of a determinate sentence that is no less than 8 years and does not exceed 20 years.

sirable than the one he is serving. Nor, in such circumstances, can a defendant be heard to complain that he was not given advance notice of the proposed sentence. By any rational measure, the resentence at issue was a much more favorable sentence than the one originally imposed. Thus, the resentencing court's determination to impose the minimum sentence—the sentence defendant requested—cannot be assailed.

The reality of the appeal of the A-I resentence is not that it is anything less than entirely favorable to defendant or that he ultimately wants any other resentence on his class A-I felony conviction, but rather that he hopes a temporary reinstatement of his original sentence on that conviction will make him eligible for resentencing on his class A-II felony conviction. As noted, the 2005 DLRA, affecting sentences on class A-II felony convictions, was signed into law after defendant had already been resentenced on his class A-I felony conviction.

Defendant's subsequent motion to be resentenced on his class A-II felony conviction was denied because, as the court ruled, he failed to meet one of the eligibility requirements, i.e., that he be not more than 12 months from being an eligible inmate as that term is defined in Correction Law § 851 (2). What defendant seeks by the appeal of his resentence on his A-I conviction is a vacatur of his resentence on that conviction, a reversal of the denial of resentence on his class A-II conviction for lack of eligibility, and a remand for further proceedings. At that time, defendant will argue that the temporary reinstatement of his original sentence on his class A-I felony now makes him eligible for resentencing on his class A-II felony conviction, and then request the court to reimpose the very same eight-year determinate sentence and five-year term of postrelease supervision on his class A-I felony that the court previously imposed.

We reject the attempt to use this appeal for the purpose of making an end run around the eligibility requirements of the 2005 DLRA. Even if defendant could achieve eligibility for resentencing on the class A-II felony conviction only by obtaining a reinstatement of his original 15-to-life sentence on his class A-I felony conviction, we would not countenance the vacatur of a favorable class A-I felony resentence to accommodate a defendant's circuitous attempt to take advantage of the eligibility requirements of the 2005 DLRA and then permit the reimposition of that very same sentence.

■ After the 2005 DLRA took effect, defendant petitioned for resentencing on his A-II conviction, asking the court to impose

a determinate sentence of three years' imprisonment, which must be accompanied by a term of five years of postrelease supervision. The sentencing court denied the petition on the ground of ineligibility because defendant "cannot meet the requirement under the revised DLRA that he is not more than twelve months from being an eligible inmate as that term is defined in subdivision 2 of section 851 of the Correction Law." This was an incorrect ruling insofar as section 851 (2) is concerned. As will be discussed, infra, however, defendant failed to meet a second prerequisite for resentencing, namely, the "eligibility requirements" for receiving merit time set forth in Correction Law § 803 (1) (d). Thus, his application for resentencing on his class A-II felony conviction was properly denied.

The 2005 DLRA sets forth several eligibility criteria for a defendant seeking resentencing on a class A-II felony conviction. Such defendant must be "in the custody of the department of correctional services convicted of a class A-II felony offense" as defined in Penal Law article 220, and the class A-II felony offense must have been "committed prior to the effective date of this section," i.e., October 29, 2005 (DLRA § 1). The inmate must have been "sentenced thereon to an indeterminate term of imprisonment with a minimum period not less than three years." (*Id.*) It also provides for the particular requirement upon which the sentencing court relied—that the inmate must be "more than twelve months from being an eligible inmate as that term is defined in subdivision 2 of section 851 of the correction law." (*Id.*) Finally, the enactment states that the inmate must meet "the eligibility requirements of paragraph (d) of subdivision 1 of section 803 of the correction law." (*Id.*)

To understand the meaning of "more than twelve months from being an eligible inmate" requires analysis. Correction Law § 851 (2) defines an "eligible inmate" as a person "eligible for release on parole or who will become eligible for release on parole or conditional release within two years." This Court, in considering the statutes involved, has held that "although not a model of clarity, when read together, [they] require that, in order to be eligible for resentencing, an A-II offender may not be eligible for parole within three years" (*People v Bautista*, 26 AD3d 230, 230 [2006], *appeal dismissed* 7 NY3d 838 [2006]).

The People argue that defendant does not meet that requirement as he was within three years of parole eligibility on his A-II conviction at the time he filed his second resentencing motion. Arrested on the A-II felony on November 22, 2001, defen-

dant was incarcerated from that time until his sentencing on October 15, 2002, when he was sentenced to an indeterminate term of three years to life imprisonment. Crediting defendant for the time he was incarcerated prior to sentence, defendant's minimum three-year term would expire, at the latest, in November 2004. Thus, the People argue, at the time of the filing of his resentence application on his class A-II felony conviction in October 2005, defendant was not more than three years from being parole eligible on that conviction. Defendant does not dispute that he was not more than three years from parole eligibility on his class A-II felony sentence. His argument is that the "more than three years from parole eligibility" requirement for resentencing under the 2005 DLRA should be measured from the parole eligibility date of his cumulative sentence, which, in essence, is his class A-I felony sentence.

In response, the People argue that the enumerated requirements for resentence—the conviction, sentence, and time and merit eligibility requirements—all apply solely to the class A-II conviction, and that the time remaining on defendant's A-II sentence is the sole measure of his parole eligibility. The People bolster this argument by claiming that any other result would be unfair because it would mean that an incarcerated felon convicted of multiple crimes would be in a better position to qualify for resentencing than a defendant convicted solely of a class A-II felony. This argument is, in our view, foreclosed by the remedial nature of the 2005 enactment.

By its plain terms the 2005 DLRA provides that a person convicted of a class A-II offense and sentenced on that conviction to a term of three years (or more) to life, who is more than three years from parole eligibility and who is eligible to accrue merit time, may petition for resentencing. While the Act's initial eligibility requirements specifically pertain to defendant's class A-II felony conviction—that defendant be "in the custody of the department of correctional services convicted of a class A-II felony offense," that said offense have been committed prior to the effective date of the 2005 DLRA, and that defendant have been sentenced on that conviction to an indeterminate term of not less than three years to life imprisonment—it does not follow that the remaining eligibility requirements apply only to defendant's sentence and incarceration on his class A-II felony conviction.

The 2005 Act does not refer to a defendant with more than three years remaining on his class A-II sentence before becom-

ing parole eligible. The pivotal measuring rod is not the time remaining on an A-II felony sentence, but the time before an inmate becomes an "eligible inmate," a term of art specifically defined, for these purposes, in Correction Law § 851 (2). A statute is generally construed according to its plain terms (*see Matter of Guido v Goord*, 1 NY3d 345 [2004]). It should also be noted that the People's interpretation of the statute would require the Department of Correctional Services to do a series of time calculations to determine parole eligibility on separate convictions. Even though the Department may have already calculated an inmate's cumulative minimum sentence and parole eligibility status on that basis, it would be required to recalculate the minimum sentence for each class A-II narcotics offender for just that offense, separate from any additional convictions. The Legislature could not have contemplated such a fragmentation of sentences to ascertain an inmate's parole eligibility status, not to mention the cumbersome undertaking imposed upon the Department.

Even though, under our holding, defendant was more than three years from being parole eligible in accordance with the 2005 DLRA, he still fails to satisfy another one of the qualifications for resentencing under this statute, namely, the eligibility requirements of Correction Law § 803 (1) (d), which provides for "merit time allowance[s]" against both indeterminate and determinate sentences. Despite the 2005 DLRA's reference to the "eligibility requirements" of section 803 (1) (d), that subdivision of the Correction Law does not use the term "eligibility requirements" or any similar expression. Instead, it speaks of merit time allowances being "earn[ed]," "credited," "granted" and "withheld."[2] Subparagraph (v) states that section 803 (1) (d) applies to persons in custody and serving sentences as of certain dates.

---

2. Section 803 (1) (d) provides, in pertinent part:

"(i) Except as provided in subparagraph (ii) of this paragraph, every person under the custody of the department . . . serving an indeterminate sentence of imprisonment with a minimum period of one year or more or a determinate sentence of imprisonment of one year or more imposed pursuant to [Penal Law § 70.70 or 70.71] may earn a merit time allowance.

"(ii) Such merit time allowance shall not be available to any person serving an indeterminate sentence authorized for an A-I felony offense, other than an A-I felony offense defined in [Penal Law article 220], or any sentence imposed for a violent felony offense as defined in [Penal Law § 70.02, or certain homicide, sex- and harassment-related offenses]. . . .

*(n. cont'd)*

In summary, section 803 (1) (d) provides that a defendant serving an indeterminate or determinate sentence of one year or more may earn merit time, unless he was convicted of certain violent or other specified offenses. Such an allowance may be granted when the defendant "successfully participates" in an assigned "work and treatment program" and "obtains a general equivalency diploma, an alcohol and substance abuse treatment certificate, a vocational trade certificate . . . or performs at least four hundred hours of service as part of a community work crew" (§ 803 [1] [d] [iv]). A merit time allowance "shall be withheld for any serious disciplinary infraction" or upon a judicial determination that the defendant, while an inmate, commenced a frivolous lawsuit, proceeding or claim against a state agency, officer or employee (id.).

Thus, to obtain a merit time allowance a defendant must be serving a sentence of one year or more, be in the Correctional Services Department's custody as of certain periods of time, not have been convicted of certain crimes, not have committed a "serious disciplinary infraction" or commenced a frivolous civil lawsuit or other civil proceeding against a state agency, officer or employee, and have participated in certain programs. Since section 803 (1) (d) provides that a defendant cannot obtain a merit time allowance without satisfying these various requirements, it may fairly be concluded that these are the "eligibility requirements" referred to in the 2005 DLRA.

As the record shows, defendant, having committed two serious disciplinary infractions while incarcerated, did not meet one of the requirements for obtaining a merit time allowance. The People's proof, set forth in their response to the resentencing petition, which went unchallenged, established the pertinent

---

"(iv) Such merit time allowance may be granted when an inmate successfully participates in the work and treatment program assigned pursuant to [Correction Law § 805] and when such inmate obtains a general equivalency diploma, an alcohol and substance abuse treatment certificate, a vocational trade certificate following at least six months of vocational programming or performs at least four hundred hours of service as part of a community work crew.

"Such allowance shall be withheld for any serious disciplinary infraction or upon a judicial determination that the person, while an inmate, commenced or continued a civil action, proceeding or claim that was found to be frivolous as defined in [CPLR 8303-a (c)], or an order of a federal court pursuant to [Fed Rules Civ Pro rule 11] imposing sanctions in an action commenced by a person, while an inmate, against a state agency, officer or employee."

facts showing these infractions. On April 7, 2003, defendant, when directed to provide a sample for urinalysis and given approximately three hours in which to do so was "unable" to comply and was consequently charged with violating a direct order. He was sentenced to 83 days in the Special Housing Unit and lost phone, package and commissary privileges for that period. In addition, it was recommended that defendant lose three months of good time for the violation. On May 15, 2004, defendant was again found guilty of disobeying a direct order to submit a sample for urinalysis. He was sentenced to 152 days of "keeplock" and lost phone, package and commissary privileges for that period. In addition, it was recommended that defendant lose 180 days of good time for this violation.

These violations qualify as "serious disciplinary infractions" under section 803 (1) (d). While the term is not defined in the Correction Law, a "serious disciplinary infraction" is defined in the regulations of the Department of Correctional Services to include a "receipt of disciplinary sanctions" that entail "60 or more days of SHU [Special Housing Unit] and/or keeplock time" (7 NYCRR 280.2 [b] [3]) and the "receipt of any recommended loss of good time as a disciplinary sanction" (7 NYCRR 280.2 [b] [4]). Thus, defendant has failed to meet the eligibility requirements for a merit time allowance under Correction Law § 803 (1) (d). In fact, by the time defendant filed his A-II felony resentencing petition, the Department of Correctional Services had already determined that he would not be granted merit time.

While not disputing that he committed two serious disciplinary infractions or that, as a result, section 803 (1) (d) mandates he not be granted a merit time allowance, defendant contends he met the eligibility requirements nonetheless because, as he asserts, by "eligibility requirements," the 2005 DLRA was referring only to the requirements in section 803 (1) (d) for "earning" a merit time allowance, not the requirements for being "granted" one. According to his interpretation, a defendant will have met the "eligibility requirements" of section 803 (1) (d) as long as he was not convicted of any non-drug A-I felony violent crime or other offense listed in section 803 (1) (d) (ii), even if he has been found guilty of "serious disciplinary infractions" or otherwise does not qualify for the grant of a merit time allowance.

Nothing in the 2005 DLRA or Correction Law § 803 (1) (d) suggests that the Legislature intended such a narrow meaning

to "eligibility requirements." The reality is quite the opposite. The requirements for "earning" a merit time allowance are found in subparagraph (i) of section 803 (1) (d), while the requirements for being "granted" a merit time allowance are set forth in subparagraph (iv). If, by "eligibility requirements," the Legislature had meant to include only the requirements for "earning" a merit time allowance and not those for being "granted" a merit time allowance, it easily could have—and surely would have—referenced only subparagraph (i) of section 803 (1) (d) in the 2005 DLRA. Instead, the Legislature referred to section 803 (1) (d) without any such limitation.

Furthermore, the overall scheme of section 803 (1) (d) does not support defendant's position. To "earn" a merit time allowance a defendant must meet the requirements of subparagraph (i) of Correction Law § 803 (1) (d), and avoid the disqualifying factors of subparagraph (ii). To be "granted" a merit time allowance, however, a defendant must satisfy the requirements in subparagraph (iv). The Commissioner of Correctional Services has discretion to grant a merit time allowance only when all these requirements have been met. Thus, the requirements set forth in section 803 (1) (d) (iv), no less than those in section 803 (1) (d) (i) and (ii), constitute the "eligibility" requirements for the grant of merit time. Nothing in the 2005 DLRA or section 803 (1) (d) supports defendant's argument that the phrase "eligibility requirements" refers only to the requirements for earning a merit time allowance, and not also to those for being granted one.

This analysis notwithstanding, the Second Department, in *People v Sanders* (36 AD3d 944 [2007], *lv dismissed* 8 NY3d 927 [2007]), has held that the 2005 DLRA's reference to "eligibility requirements" was intended to mean only the requirements for earning merit time. In so holding, the Court stated only that a broader interpretation "would vest the authority for resentencing in the DOCS rather than in the sentencing court, a result the Legislature clearly could not have intended" (36 AD3d at 946), an explanation that overlooks the fact that the Legislature, rather than specifically referring to the requirements for earning merit time, referred to the entirety of section 803 (1) (d). Furthermore, it ignores the fact that the Legislature could have reasonably decided to deny resentencing to individuals who had not met the requirements for being granted merit time. An inmate's failure to meet those requirements and, in particular, his

repeated commission of serious acts of insubordination while incarcerated, can only be viewed adversely in considering his likelihood of readjusting to life outside of prison.

Defendant also argues that increasing judicial discretion in sentencing people convicted of drug crimes was the legislative goal underlying the drug reform laws, and that his narrow interpretation of the eligibility requirements of the 2005 DLRA is necessary to give effect to that goal. But while the Legislature may have sought to increase judicial discretion over sentencing in drug cases, it also significantly circumscribed the group of class A-II felony offenders who could qualify for resentence. Indeed, the Legislature's promulgation of "eligibility requirements" in Correction Law § 803 (1) (d) via the 2005 DLRA shows an intent to limit the availability of resentencing relief to class A-II offenders. The requirement that a defendant meet the "eligibility requirements" of section 803 (1) (d) was merely one of several limitations on the availability of resentencing relief to class A-II felony offenders. As noted, the Legislature envisioned that only some of the class A-II felony offenders still serving prison sentences would receive resentencing relief from their courts, and it provided other class A-II felony offenders with administrative relief from the remaining sentences, including additional merit time reductions in their prison terms and automatic termination of their lifetime sentences after three years of unrevoked parole (see L 2004, ch 738, § 37, adding new subdivision [3-a] to Executive Law § 259-j).

Finally, defendant argues that "equal protection and due process mandate that this Court resentence defendant on his Class A-II conviction." In support of this claim, defendant contends that "there is no reason" for the State to afford resentencing to some nonviolent class A-II drug offenders and to deny it to others like himself. He further argues that there is "no rational basis for reducing his sentence on the higher [class A-I] offense to a determinate 8 years, but still maintaining a potential life sentence on his Class A-II conviction."

Since there is a strong presumption as to the constitutionality of any legislative enactment (Dalton v Pataki, 5 NY3d 243, 255 [2005], cert denied 546 US 1032 [2005]), the party challenging a classification bears the burden of showing that it is not rationally related to a legitimate government interest (see D'Amico v Crosson, 93 NY2d 29, 32 [1999]). There is a heavy burden on the party challenging the legislative enactment to

"negative every conceivable basis which might support it" (*Madden v Kentucky*, 309 US 83, 88 [1940]), "whether or not the basis has a foundation in the record" (*Heller v Doe*, 509 US 312, 320-321 [1993]).

The distinctions drawn by the Legislature in reforming the drug laws are entirely reasonable. As this Court has noted,

> "Although the statute treats different groups of convicted A-II felons differently on the basis of their parole eligibility dates, it is not unconstitutional, since the distinction is rationally related to the achievement of the valid state objective of ameliorating the conditions of those A-II offenders facing the longest prison time" (*Bautista*, 26 AD3d at 230).

Similarly, the Legislature could have reasonably determined to treat various groups of A-II felons differently depending on their disciplinary record and other behavior while incarcerated. Such a distinction is rationally related to the valid state objective of granting early release from prison and early termination of parole supervision to those defendants best prepared for reentry into society.

Nor is the statutory scheme rendered irrational because certain defendants, like defendant here, would be able to petition the courts to convert their indeterminate sentences to a determinate term on their class A-I convictions, but be unable to obtain relief from their lifetime terms on their class A-II felony convictions. The Legislature could sensibly have decided to address the issue of terminating the lifetime terms of defendants who fell into the latter category by administrative measures that would not involve the courts. Indeed, as noted, the 2004 DLRA provided for automatic termination of a lifetime term after three years of unrevoked parole.

We have examined defendant's other contentions and find that they are without merit.

Accordingly, the order of the Supreme Court, New York County (Charles J. Tejada, J.), entered on or about July 12, 2005, resentencing defendant on his conviction of criminal sale of a controlled substance in the first degree to a term of eight years, and the order of the same court and Justice, entered on or about March 13, 2006, which denied defendant's petition for resentence on his conviction of criminal sale of a controlled substance in the second degree, should be affirmed.

FRIEDMAN, J.P., MARLOW, SWEENY and CATTERSON, JJ., concur.

Order, Supreme Court, New York County, entered on or about July 12, 2005, and order, same court, entered on or about March 13, 2006, affirmed.